UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| KEVIN WANNER,<br><br>        Petitioner,<br><br>v.<br><br>B. EISCHEN<br>*FPC-Duluth Warden*,<br><br>        Respondent. | Case No. 22-CV-1307 (JRT/JFD)<br><br><br>**REPORT AND<br>RECOMMENDATION** |

This matter is before the Court on Kevin Wanner's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Pet. 1, Dkt. No. 1.) The case has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. Mr. Wanner claims that the Bureau of Prisons failed to apply his earned time credits under the First Step Act ("FSA") to his sentence, preventing him from transferring to pre-release custody or home confinement under the CARES Act or the Second Chance Act. (Pet. 7; Reply 2, Dkt. No. 15.) The undersigned recommends that Mr. Wanner's Petition be denied because Mr. Wanner's claim is premature and not ripe for adjudication. Therefore, his suit does not present a "case or controversy" within the meaning of Article III of the U.S. Constitution and a federal court may not hear it.

**I.      BACKGROUND**

Charles Wanner is currently serving a 135-month prison sentence in the Federal Medical Center in Rochester, MN ("FMC-Rochester"). (Declaration of Kyja Winger ¶ 3,

Dkt. No. 13; Notice of Change of Address, Dkt. No. 17.) Before his transfer to FMC-Rochester, Mr. Wanner was serving his sentence at the Federal Prison Camp in Duluth ("FPC-Duluth"). (Pet. 1.) At the time of briefing, Mr. Wanner's anticipated release date was March 25, 2028.[1] (Winger Decl. ¶ 3.) Mr. Wanner claims that the BOP has failed to issue his FSA time credits and asks the Court to order the BOP to issue those credits and apply them to his sentence. (Pet. at 8.)

### A. Statutory and Administrative Background

To assess Mr. Wanner's claims, it is necessary to review how inmates can earn time credits under the FSA, how the BOP tracks FSA time credits, and how inmates can alert prison officials if they believe their FSA time credits have been calculated incorrectly.

#### i. Earning First Step Act Time Credits

Signed into law on December 21, 2018, the FSA included a package of sentencing and penological reforms, including the penological reform that is at the root of this case, the reduction of the percentage of their sentence that must be served in prison of certain federal inmates who earn time credits for participating in programs designed to reduce recidivism. Pub. L. No. 115-391, 132 Stat. 5194. Section 101 of the FSA, codified at 18 U.S.C. § 3632, directed the Attorney General to develop a risk and needs assessment system for federal inmates. The "risk" assessment part of the system classifies each inmate as having minimum, low, medium, or high risk of recidivism, using the Prisoner

---

[1] On March 17, 2023, BOP's public facing website showed that Mr. Wanner's anticipated release date is March 26, 2027, a year earlier than the date provided in the BOP's briefing materials. Inmate Locator, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed Mar. 17 2023).

Assessment Tool Targeting Estimated Risk and Needs ("PATTERN"). 18 U.S.C. § 3632(a)(1); (Winger Decl. Ex. C at 2). The "needs" assessment component of the system "determine[s] the type and amount of evidence-based recidivism reduction programming that is appropriate for each inmate and assign[s] each inmate to such programming accordingly." 18 U.S.C. § 3632(a)(3). After BOP staff assess an inmate's programming needs, they enter the inmate's needs in SENTRY (Winger Decl., Ex. C at 2–3), a database for a variety of inmate information (*See* Declaration of Shannon Boldt. ¶ 9, Dkt. No. 12 (describing how the BOP maintains records of inmate complaints in SENTRY)). Inmates who successfully complete evidence-based recidivism reduction ("EBRR") programming or productive activities ("PA") can earn FSA time credits. 18 U.S.C. § 3632(d)(4). Inmates who are at recidivism risk levels medium or high earn time credits at a rate of 10 days of time credits for every 30 days of EBRR programming successfully completed, while inmates at recidivism risk levels minimum or low earn time credits at a rate of 15 days for every 30 days of successfully completed EBRR programming or PAs. 18 U.S.C. § 3632(d)(4)(A).

The FSA limits which inmates can earn FSA time credits. Inmates whose crime of conviction is on a long list of federal offenses set out at 18 U.S.C. § 3632(d)(4)(D) are not eligible to earn FSA time credits at all, and even those inmates who are eligible are not granted time credits for any EBRR programming or PAs they completed before the FSA was passed or that they completed during any period of detention before their sentence started. 18 U.S.C. § 3632(d)(4)(B). Further, inmates will only earn FSA time credits for EBRR programming or PAs they successfully complete. 18 U.S.C. § 3632(d)(4)(A).

3

Inmates can also lose FSA time credits they have already earned if they commit a disciplinary violation. 18 U.S.C. § 3632(e); 28 C.F.R. § 541.3 (listing "prohibited acts and available sanctions," including the loss of FSA time credits).

Inmates who have earned FSA time credits can apply the credits toward time in pre-release custody (confinement to the home or a residential re-entry center) or supervised release, instead of prison. 18 U.S.C. § 3632(d)(4)(C); *see* 18 U.S.C. § 3624(g)(2) (describing types of pre-release custody); 18 U.S.C. § 3624(g) (describing supervised release). Inmates with sentences that include a period of supervised release can apply time credits to their supervised release, allowing them to start supervised release up to a year earlier than they would have otherwise. 18 U.S.C. § 3624(g)(2); *Glawe v. Rardin*, No. 22-CV-2423 (ECT/TNL), 2022 WL 17476545, at *3 (D. Minn. Nov. 10, 2022), *R&R adopted*, 2022 WL 17466287 (D. Minn. Dec. 6, 2022).

Just as there are limits on earning FSA time credits, there are limits on applying them. *See* 18 U.S.C. § 3624(g)(1) (explaining who is eligible to apply FSA time credits). To apply FSA time credits, an inmate must (1) have the remainder of their sentence calculated, (2) have FSA time credits equal to the amount of time remaining on their sentence, (3) have "demonstrated recidivism risk reduction or [] maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment," and have met additional requirements depending on whether they seek placement in pre-release custody or supervised release. *Id.* When an inmate's time credits are equal to the remainder of their sentence, BOP staff review these criteria and apply their time credit to time in a pre-release custody facility or supervised release. *Flynn v. Eischen*, No. 22-CV-1265 (ECT/LIB), 2022

4

WL 18461620, at *3 (D. Minn. Oct. 26, 2022), *R&R adopted*, 2023 WL 415162 (D. Minn. Jan. 25, 2023).

### ii. Tracking FSA Time Credits in Prison

The Bureau of Prisons has implemented the FSA in phases since 2018. In phase one, the Attorney General developed and made public the risk and needs assessment system. Press Release 19-784, U.S. Dep't of Justice, Department of Justice Announces the Release of 3,100 Inmates Under First Step Act, Publishes Risk and Needs Assessment System (July 19, 2019), https://www.justice.gov/opa/pr/department-justice-announces-release-3100-inmates-under-first-step-act-publishes-risk-and. In phase two, the Attorney General completed an initial assessment of each BOP inmate's recidivism risk and programming needs. 18 U.S.C. §§ 3621(h)(1)(A) and 3632(a)(3) (directing the BOP to "determine the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner and assign each prisoner to such programming accordingly[.]"). Press Release 20-37, U.S. Dep't of Justice, Department of Justice Announces Enhancements to the Risk Assessment System and Updates on First Step Act Implementation (Jan. 15, 2020), https://www.justice.gov/opa/pr/department-justice-announces-enhancements-risk-assessment-system-and-updates-first-step-act. Finally, in the third and final phase, which concluded on January 15, 2022, the Justice Department was to phase-in programming and productive activities. 18 U.S.C. § 3621(h)(2). During the two-year phase-in, the BOP had discretion to "expand any evidence-based recidivism reduction programs and productive activities that exist" and award FSA time credits to inmates who successfully completed the programs and activities. 18 U.S.C. § 3621(h)(4).

5

The BOP decided not to award any time credits until the end of the phase-in period, or January 15, 2022, and courts routinely held that BOP had discretion to wait until that date to do so. *Rand v. Fikes*, No. CR 21-1276 (JRT/JFD), 2021 WL 5567900, at *2 (D. Minn. Nov. 29, 2021), *R&R adopted*, 2021 WL 5567900 (Nov. 29, 2021) ("Nearly every court to address this issue has held that Congress gave the BOP discretionary power to award FSA time credits during the 'phase-in' period because the statute contains the word "may" rather than 'shall.'"). *But see id.* at *3 ("The Court agrees with the concerns expressed by numerous other courts that BOP's delay in awarding FSA time credits is 'evading the spirit of a phase-in of FSA earned time credits . . . . "[T]he BOP's decision is perplexing and contrary to the purpose of the First Step Act[.]" (quoting *Holt v. Warden*, No. 20-CV-4064, 2021 WL 1925503 (D.S.D. May 13, 2021))). Now, the BOP is modifying the SENTRY database to track FSA time credits. (Winger Decl. ¶ 10.) BOP reports that it is prioritizing updating the FSA time credits for inmates who are closest to their release date. (*Id.*) Although FSA time credits can be applied to start supervised release or prerelease custody early, the BOP asserts that the time credits do not count towards the measure of an inmate's sentence completion. (Winger Decl. ¶ 10.)

### iii. Exhausting Administrative Remedies in Prison

Prisoners challenging their confinement under 28 U.S.C. § 2241 must attempt to resolve their complaint within the prison system (knowing as "exhausting administrative remedies") before filing a habeas petition in court. *Mathena v. United States*, 577 F.3d 943, 946 (8th Cir. 2009) (dismissing § 2241 claim because petitioner did not exhaust administrative remedies). The BOP has a four-step process for seeking administrative

6

remedies. (Boldt Decl. ¶ 5 (citing 28 C.F.R. § 542.10–.19).) First, an inmate must attempt to informally resolve their complaint. (Boldt Decl. ¶ 6.); 28 C.F.R. § 542.13. If informal resolution is unsuccessful, the inmate may file a "formal Request for Administrative Remedy" with their facility within 20 days of the event at issue. 28 C.F.R. § 542.14. An inmate can appeal an unsatisfactory facility response to the Regional Office no later than 20 days after the Warden signed the facility response. (Boldt Decl. ¶ 6); 28 C.F.R. § 542.15. An inmate can appeal the Regional Office's response by filing an appeal with the Central Office no later than 30 days after the Regional Director signed the response. (Boldt Decl. ¶ 6); 28 C.F.R. § 542.15. An inmate exhausts his administrative remedies only when he has sought review at all four levels. (*Id.* at ¶ 7.)

### B. Factual Background

Mr. Wanner is eligible to earn FSA time credits. (Winger Decl. ¶ 4.) He has maintained a "minimum" recidivism risk score since his first assessment in November 2019. (*Id.* ¶ 5.) According to the BOP, Mr. Wanner currently needs programming around "finance/poverty." (*Id.* ¶ 8.) As of April 23, 2022, the Central Office estimated that Mr. Wanner had 600 days of time credits. (*Id.* ¶ 11.) To reach this number, the Central Office counted the number of days from December 18, 2018[2] to April 23, 2022, divided that

---

[2] On December 18, the Senate passed a version of the bill that would become the First Step Act. 164 Cong. Rec. S7781 (daily ed. Dec. 18, 2018) (Vote No. 271). The House of Representatives concurred with the Senate's amendment on December 20, 164 Cong. Rec. H10366 (daily ed. Dec. 20, 2018), and the President signed the bill into law on December 21, Pub. L. No. 115-391, 132 Stat. 5194. It is unclear why BOP does not count from the date of the law's enactment, but rather from the date that the Senate approved of the bill. *Contra*, Press Release 22-30, U.S. Dep't of Justice, Justice Department Announces New

number by 30, rounded the result down, and then multiplied it by 15, because inmates at Mr. Wanner's risk level earn 15 time credits every 30 days. (Def.'s Resp. 16.) *See* 18 U.S.C. § 3632(d)(4)(A). Mr. Wanner's sentence includes supervised release, so he could apply his FSA time credits toward supervised release. (Winger Decl., Ex. A at 2, Dkt. No. 13-1.)

Mr. Wanner alleges that he has not received the First Step Act time credits to which he is entitled. (Pet. 6–7.) He reports that he raised his concerns about the application of his First Step Act time credits to staff at Federal Prison Camp in Duluth, and that staff told him there was "nothing they could do" about his situation. (Pet. 2.) Mr. Wanner recalls getting conflicting responses from prison officials about his FSA credits. (Reply, Dkt. No. 15 (ranging from "this is not law" to "[w]e will get to it when we can" to "[w]e can't do anything as [the] Region[al Office] is doing everything there").) Mr. Wanner did not file any administrative remedy or file any appeals regarding FSA time credits. (Boldt Decl. ¶¶ 12–13; *see* Pet. at 3, 6.)

## II.  ANALYSIS

A court may grant habeas relief under 28 U.S.C. § 2241 to a prisoner who "is in custody in violation of the Constitution or laws or treaties of the United States." A writ of habeas corpus under § 2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction,

---

Rule Implementing Federal Time Credits Program Established by the First Step Act (Jan. 13, 2022), https://www.justice.gov/opa/pr/justice-department-announces-new-rule-implementing-federal-time-credits-program-established ("Inmates are eligible to earn Time Credits retroactively back to Dec. 21, 2018, the date the First Step Act was enacted, subject to BOP's determination of eligibility.").

*Matheny v. Morrison*, 307 F.3d 709, 711 (8th Cir. 2002), including the computation of the sentence, *Preiser v. Rodriguez*, 411 U.S. 475, 498 (1973) (observing that petitions seeking "immediate release or a speedier release from . . . confinement" are "the heart of habeas corpus"). Mr. Wanner argues that the BOP's failure to apply his FSA time credits to his sentence is delaying his release from confinement and therefore he is being held in violation of the Constitution, laws, or treaties of the United States. (Pet. at 6.) This is a claim about the proper computation of Mr. Wanner's sentence, and as such, it may be brought under § 2241. *See United States v. Reed*, No. 18-CV-1431 (SRN/DTS), 2023 WL 2308271, at *5 n.4 (D. Minn. Mar. 1, 2023); *Rand*, 2021 WL 5567900, at *4. The case presents two questions: (1) whether Mr. Wanner's failure to exhaust administrative remedies bars his claim and (2) whether Mr. Wanner's claim is premature. The answer to the first question is no and the answer to the second question is yes.

**A. Mr. Wanner's Failure to Exhaust Administrative Remedies is Excusable.**

Defendant argues that the Court should deny Wanner's habeas petition because he failed to exhaust the administrative remedies available to him within the prison system before he filed his lawsuit. (Def.'s Resp. 12–14.) For his part, Mr. Wanner never argues that he exhausted his administrative remedies. He argues that the First Step Act does not require exhaustion. (Reply 3.) Mr. Wanner is incorrect; a prisoner must exhaust his administrative remedies before filing a habeas petition. *Mathena v. United States*, 577 F.3d

9

943, 946 (8th Cir. 2009). Nevertheless, for the following reasons the Court will excuse Mr. Wanner's failure to exhaust his remedies in this instance.

The exhaustion requirement is important and beneficial. It creates a concrete factual record, allows administration officials to exercise their discretionary authority, promotes "the autonomy of the prison administration," and increases judicial economy by narrowing or resolving a legal issue before court intervention. *Mason v. Ciccone*, 531 F.2d 867, 870 (8th Cir. 1976). However, the exhaustion requirement for a 28 U.S.C. § 2241 habeas claim is not jurisdictional, which means that a court can still address the legal question presented in a § 2241 case even if a prisoner did not exhaust his administrative remedies. *Lueth v. Beach*, 498 F.3d 795, 797 n.3 (8th Cir. 2007) (explaining that exhaustion is a "judicially created, not jurisdictional" requirement); *Pope v. Sigler*, 542 F.2d 460, 461 (8th Cir. 1976) (noting that the district court had jurisdiction to issue a writ of habeas corpus but properly dismissed the case for failure to exhaust). *But see United States v. Thompson*, 297 F. App'x 561, 562 (8th Cir. 2008) ("While the district court properly denied relief, it should not have reached the merits because Thompson failed to demonstrate he had presented his claim to [BOP] before seeking habeas corpus relief."). Courts have considered the merits in cases where petitioners failed to exhaust when exhaustion would be futile or when the issues raised in the petition would be moot before a petitioner could complete the administrative grievance procedure. *See e.g.*, *Aguilar v. United States*, No. 15-CV-487 (SRN/JSM), 2015

WL 5719166, at *2 (D. Minn. Sept. 29, 2015) (futility); *Flynn v. Eischen*, 2022 WL 18461620, at *2 (mootness).

The Court will not recommend dismissal in this case for failure to exhaust administrative remedies because Mr. Wanner's case has been pending in this court for some time and presents a straightforward legal question, not a disputed factual question. The Court can decide this matter on the existing record. It is doubtful that the additional administrative process required to satisfy the exhaustion requirement would generate any additional facts and if it did it is even more doubtful that those facts would be material (in the sense of having the potential to change the outcome). *See Gurzi v. Marques*, No. 18-CV-3104 (NEB/KMM), 2019 WL 6481212, at *2 (D. Minn. Oct. 10, 2019) (reaching merits of petition because case had been pending for "a substantial length of time" and there was no need to develop the administrative record), *R&R adopted*, No. 18-CV-3104 (NEB/KMM), 2019 WL 6464838 (D. Minn. Dec. 2, 2019); *see also Moore v. Rardin*, No. 22-CV-2476 (NEB/TNL), 2022 WL 18542331, at *3 (D. Minn. Dec. 1, 2022) (reaching merits in an FSA time credits case), *R&R adopted*, 2023 WL 1451560 (D. Minn. Feb. 1, 2023); *Mills v. Starr*, 2022 WL 4084178, at *4 (same). Mr. Wanner's case is almost a year old, and it poses a simple question: is his demand that the BOP apply his time credits to the measure of his time served premature?

### B. 18 U.S.C. § 3624(g)(1)(A) Prevents the Bureau of Prisons from Applying Mr. Wanner's Time Credits Now, So Mr. Wanner's Claim is Premature.

Mr. Wanner argues that the 600 days he has earned in FSA time credits "should be applied towards" his "percentage of time served." (Reply 2.) He claims that the BOP has

11

not applied the FSA time credits to his sentence, which causes inmates like him to "show a lower percent of sentence completed." (Pet. 7.) As a result, he argues there are "delays in inmates obtaining the necessary percentage sentence satisfaction needed for release" under laws like the CARES Act[3] or the Second Chance Act.[4] (*Id.*) According to Mr. Wanner, FPC-Duluth staff told him that he met "all criteria" for home confinement under the CARES Act except that he has not served 50% of his sentence. (Reply 2.) The BOP replies that FSA time credits "do not change 'the percentage of statutory time served' on an inmate's sentence computation," as Mr. Wanner seems to believe. (Def.'s Resp. 11 (citing

---

[3] In response to the COVID-19 pandemic, the CARES Act temporarily expands BOP's authority to transfer inmates to home confinement under 18 U.S.C. § 3624(c)(2). *United States v. Houck*, 2 F.4th 1082, 1085 (8th Cir. 2021); *Gorski v. Starr*, No. 22-CV-2346 (WMW/TNL), 2022 WL 18135249 at *1 (D. Minn. Dec. 8, 2022), *R&R adopted*, 2023 WL 112704 (D. Minn. Jan. 5, 2023). One of the factors BOP considers in determining whether to transfer an inmate to home confinement is whether they have completed 50% of their sentence. *Gorski*, 2022 WL 18135249 at *1 (citing *Garcia v. Eischen*, No. 22-CV-444 (SRN/BRT), 2022 WL 4084185, at *1 (D. Minn. Aug. 16, 2022), *R&R adopted*, 2022 WL 4080751 (D. Minn. Sept. 6, 2022).)

[4] The Second Chance Act of 2008 increased the maximum time an inmate could serve in a pre-release residential reentry center to twelve months. *McCarty v. Marques*, No. 18-CV-791 (ECT/KMM), 2019 WL 302160, at *1 (D. Minn. Jan. 7, 2019), *R&R adopted*, 2019 WL 296527 (D. Minn. Jan. 23, 2019); *Khdeer v. Paul*, No. 18-CV-2112 (ECT/BRT), 2018 WL 6919637, at *1 (D. Minn. Nov. 29, 2018), *R&R adopted*, 2019 WL 79318 (D. Minn. Jan. 2, 2019). It also allowed the BOP to place inmates on home confinement for 10% of their sentence or 6 months, whichever was shorter. *United States v. Reed*, No. 18-CR-1431 (SRN/DTS), 2023 WL 2308271, at *4–5 (D. Minn. Mar. 1, 2023); *McCarty*, 2019 WL 302160, at *1. The First Step Act amended this provision to direct that BOP transfer inmates with lower risk levels and needs to home confinement for the maximum allowed time, "to the extent practicable." *Reed*, 2023 WL 2308271, at *4–5; *Brown v. Kallis*, No. 21-CV-920 (PJS/ECW), 2022 WL 1652933, at *9 (D. Minn. Apr. 21, 2022), *R&R adopted*, 2022 WL 1645666 (D. Minn. May 24, 2022).

Wanner Decl. ¶ 10).) The BOP further argues that while the FSA time credits Wanner has earned and continues to earn could afford him additional time in pre-release custody and potentially advance the date he transfers to supervised release by a year (at most), they cannot apply those FSA time credits until they equal the number of days remaining in his sentence. (Def.'s Resp. 18–19.)

Article III of the Constitution limits the jurisdiction of the federal courts to "cases" and "controversies." U.S. Const. art. III, § 2. One characteristic of a "case or controversy" is that it is "ripe," or ready, for adjudication. *See Poe v. Ullman*, 367 U.S. 497, 504 (1961); *Neb. Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1037 (8th Cir. 2000). The ripeness doctrine is meant to avoid having courts decide merely "hypothetical or abstract" disputes that have not yet "ripened" into "a dispute definite or concrete." *Neb. Pub. Power*, 234 F.3d at 1038 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). The ripeness doctrine is rooted not only in Article III's limitation of federal court jurisdiction to cases or controversies, but also in "prudential considerations for refusing to exercise jurisdiction." *Id*. at 1037. In the context of a case like this one, in which a litigant asks a court to scrutinize an act of a federal agency, the doctrine's "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148–49 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977).

13

18 U.S.C. § 3624(g)(1)(A) provides that inmates can only apply their earned time credits to their sentence when the number of credits equals the number of days remaining in their sentence. *Flynn*, 2022 WL 18461620, at *3; *Moore*, 2022 WL 18542331, at *3; *Mills v. Starr*, 2022 WL 4084178, at *4; *see also Adkins v. Engleman*, No. 22-CV-1988 (MRW), 2022 WL 14966123, at *2 (C.D. Cal. Sept. 8, 2022) ("Federal courts around the country read Section 3624(g)(1)(A) to mean that the BOP is permitted to apply time credits only once an inmate has earned enough that equal the remainder of her sentence." (internal quotations and citations omitted)), *R&R adopted*, 2022 WL 15116425 (C.D. Cal. Oct. 24, 2022). The BOP applies FSA time credits only when the credits will allow an inmate to move from prison to pre-release custody or supervisory release because an inmate can lose their time credits for disciplinary infractions or lose their ability to apply FSA time credits altogether because of an increase in their measured risk of recidivism. 18 U.S.C. § 3624(g)(1)(B), (D)(ii); 18 U.S.C. § 3632(e); 28 C.F.R. § 541.3; *Moore*, 2022 WL 18542331, at *5 ("When earned time credits equal the remainder of a prisoner's sentence, they 'can be immediately applied and would no longer be subject to loss for future prohibited acts.'" (quoting *Milchin v. Warden*, No. 3:22-CV-195 (KAD), 2022 WL 1658836, at *3 (D. Conn. May 25, 2022))). When an inmate's time credits equal the remainder of their sentence, the BOP reviews the inmate's record to confirm he meets the other criteria to have his FSA time credits applied towards pre-release custody or supervised release. *Flynn,* 2022 WL 18461620, at *3.

Mr. Wanner had approximately 600 days of FSA time credits on April 23, 2022. (Winger Decl. ¶ 11.) Assuming Mr. Wanner's PATTERN score has not changed[5] and that he has not lost any of his already earned time credits due to disciplinary violations, he would have 765 days of time credit as of March 17, 2023.[6] Mr. Wanner is expected to be released on good conduct time on March 25, 2028, 1,835 days from March 17, 2023.[7] (Winger Decl. Ex. A at 2.) Because the number of days left in his sentence[8] (1,835 days) is still more than double the number of days earned in FSA time credits (765 days), Mr. Wanner is not eligible to have his time credits applied to his supervised release date. Therefore, his lawsuit is premature. *See, e.g., Taylor v. Fikes*, No. 20-CV-1364 (PJS/ECW), 2022 WL 18584395, at *14 (D. Minn. Dec. 2, 2022), *R&R adopted*, No. 20-

---

[5] Mr. Wanner emphasizes that because he has retained a minimum risk score on the PATTERN since he started serving his sentence, there should be no speculation that he may someday be ineligible to earn FSA time credits. (Reply 2.) Nevertheless, it is possible, even if unlikely, that Mr. Wanner's risk of recidivism could increase.

[6] 1,550 days elapsed from December 18, 2018 to March 17, 2023. Translating that number of days to months, 1,550 days divided by 30 and rounded down is 51. 51 times 15 (the maximum days of FSA time credits an inmate at Mr. Wanner's recidivism can earn in a month) is 765.

[7] The BOP's public facing website reports that Mr. Wanner's anticipated release date is a year earlier than reported in the briefing. It unclear whether the BOP has updated Mr. Wanner's anticipated release date with the expectation that he will eventually be able to apply his earned time credits and start supervised release a year early, or if there is some other explanation.

[8] Calculated from March 17, 2023. *See Moore*, 2022 WL 18542331 at *5 (measuring days remaining using projected date of release with good conduct time); *Flynn*, 2022 WL 18461620, at *4 (same).

15

CV-1364 (JWB/ECW), 2023 WL 1477839 (D. Minn. Feb. 2, 2023); *Glawe*, 2022 WL 17476545, at *6; *Flynn*, 2022 WL 18461620, at *4; *Mills*, 2022 WL 4084178 at *4.

Mr. Wanner cannot apply his FSA time credits until they equal the number of days left in his sentence, so the Court need not address whether the time credits should be calculated toward Mr. Wanner's "percentage of time served" for the purposes of the CARES Act or the Second Chance Act. *Taylor*, 2022 WL 18584395, at *15. In *Taylor*, the habeas petitioner alleged that BOP failed to apply his earned time credits, claiming that if the BOP had done so, he would be eligible for home confinement under the CARES Act. *Id.* at *15. As it does in this case, the BOP in *Taylor* notes that earned time credits "are not considered part of the time served component of an inmate's sentence for purposes of CARES Act home confinement." *Id.* (*Accord* Resp. 18–19.) The Court noted that "[n]either party provided any authority on this point," but concluded that it did not need to decide the issue because the law was clear that the petitioner could not apply the earned time credits until the credits equalled the remainder of the petitioner's sentence. *Taylor*, 2022 WL 18584395, at *15. This Court will follow the same rationale; Mr. Wanner cannot apply his earned time credits to anything until they equal the remaining days in his sentence, so there is no need to discuss which measurements of his sentence completion will be affected by the application of the earned time credits.

### III. CONCLUSION

Because Mr. Wanner's earned time credits under the First Step Act do not equal the number of days remaining in his sentence, he cannot apply his credits now. His claim that

BOP officials have failed to apply his credits is therefore premature and the Court cannot rule on it. If Mr. Wanner's time credits did equal the remainder of his sentence and the BOP had not applied them, Mr. Wanner's case would be ripe for adjudication. Because that is not the case, the Court must dismiss Mr. Wanner's petition without prejudice.

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Mr. Wanner's petition be **DISMISSED WITHOUT PREJUDICE** and that judgment be entered accordingly.

Date: April 4, 2023

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).